A04A0455. RANWEZ v. ROBERTS.
(601 SE2d 449)

SMITH, Chief Judge.

After sustaining severe injuries inflicted during a vicious attack by four pit bulls, Helene Ranwez sued her tenant neighbor and the owner of the rental property. Scott Roberts, the property owner, sought summary judgment. Roberts contended that because he had relinquished possession and control of the premises to his tenant, Glenn Forrest, he could not be held liable for Ranwez's injuries as a matter of law. Citing OCGA § 44-7-14, the trial court agreed and granted judgment to Roberts. For the same reason, we affirm.

On summary judgment, the party opposing the motion should be given the benefit of all reasonable doubt, and the reviewing court should construe the evidence and all inferences and conclusions therefrom most favorably toward the nonmoving party. *Johnston v. Warendh*, 252 Ga. App. 674 (556 SE2d 867) (2001). So considered, the evidence shows that in May 1999, Roberts entered a lease with Forrest for the house next door to Ranwez. At the time, Roberts did not know that Forrest owned two pit bulls. Shortly thereafter, Roberts learned that Forrest had the dogs and "was very upset." In the latter part of 1999, Roberts discovered that the dogs had harmed the interior of the house and the garage, including damage to the carpet,

---

sheetrock, and doors. Roberts instructed Forrest to make the necessary repairs and directed Forrest either to get rid of the dogs or erect a fence and confine them inside it. In March 2000, Forrest's female pit bull had a litter of twelve puppies of which Forrest kept two. At his own expense, Forrest constructed a fence.

Before this incident on December 27, 2000, Forrest had amassed multiple citations from Cobb County Animal Control pertaining to his dogs. On two earlier occasions, his older male pit bull had bitten two other neighbors while they were in their own yards. Forrest only told Roberts about one citation, and he did not reveal information about the two prior dog attacks to Roberts except to say that a neighbor had cut his dog with a lawnmower. Nor did Forrest disclose to Roberts that he had kept two puppies from the litter, after telling Roberts that he had gotten rid of all the puppies.

At the time of the attack, Forrest was at work. A relative of Forrest had allowed the dogs to be loose outside in the front yard while the relative remained inside the garage. As Ranwez started to walk past Roberts's rental house with her own dog on a leash, "the big pit bull" left the yard and attacked her dog. Ranwez recalled that as she started to move toward her dog, she was either tripped or knocked over by the dogs. As soon as she fell, the dogs turned on her. Four pit bulls converged on Ranwez, attacking her from both sides and the back, inflicting wounds on her face, arm, and back. It is not disputed that Ranwez suffered serious injuries as a result of the attack by Forrest's pit bulls. In this appeal, Ranwez claims that the trial court erred in determining that Roberts had no liability to her as a matter of law.

1. Ranwez contends that the trial court erred by finding that Roberts was not liable for her injuries because Roberts did not part fully with the possession and right of possession as contemplated by OCGA § 44-7-14. She claims that Roberts, as the owner of the premises, owed her a duty to avoid wilful or wanton injury under OCGA § 51-3-2 (b). Pointing out that Roberts admitted that he did not feel that he had any obligation to ensure that his tenant's dogs would not attack anyone, she contends that Roberts exhibited a conscious indifference to the consequences by failing to exercise reasonable care to prevent such attacks. She asserts that Roberts breached the duty owed to her as a licensee walking on the sidewalk in front of the leased premises.

The undisputed evidence shows, however, that Roberts was an out-of-possession landlord renting the residence to Forrest under a purchase option agreement. An out-of-possession landlord's tort liability to third persons is subject only to the statutory provisions of OCGA § 44-7-14. *Martin v. Johnson-Lemon*, 271 Ga. 120, 122 (1) (516 SE2d 66) (1999). This Code section provides:

Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

OCGA § 44-7-14. This is so because the use of the premises "belongs to the tenant during the lease." The premises are the tenant's property "to use for the term for which they are rented; and the landlord has no right to enter [the premises during the lease], except by permission of the tenant." (Citations omitted.) *Colquitt v. Rowland*, 265 Ga. 905, 906 (1) (463 SE2d 491) (1995). "The code section makes it clear that a landlord who relinquishes possession of the premises cannot be liable to third parties for damages arising from the negligence of the tenant." (Citations omitted.) Id.

Ranwez argues that Roberts did not fully part with possession of the premises because paragraph 11 of the lease provided Roberts "the right of access to the house, without notice, for inspection and maintenance and to show the house to building inspectors and to prospective or actual mortgagees or purchasers during reasonable hours." Reserving a right of access for landlord-related purposes does not mean, however, that the landlord did not fully part with the leased premises. *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998). "A landlord's retention of the right to enter, inspect and repair is not inconsistent with a full surrender of possession to the tenant." (Citation omitted.) Id. at 212. Roberts's right of access for landlord-related reasons did not constitute such control as would result in his partial possession of the leased property. See *Mills v. Bonanza Intl. Corp.*, 160 Ga. App. 104, 105 (286 SE2d 337) (1981).

Under OCGA § 44-7-14, Roberts, as an out-of-possession landlord, could not be held liable for damages in tort to Ranwez, unless Ranwez could establish that her damages were attributable to Roberts's defective construction of the premises or his failure to keep the premises in repair. *Martin*, supra at 123 (2). But a landlord's liability for defective construction only exists in cases when the structure is built by him or under his supervision. *Flagler Co. v. Savage*, 258 Ga. 335, 337 (2) (368 SE2d 504) (1988). Here, there is neither a defective construction issue nor a defective repair question. It was Forrest, the tenant, not Roberts, the landlord, who built the fenced enclosure in the backyard.[1] At the time that the dogs attacked Ranwez, the dogs

---

[1] Forrest claimed that the fence encompassed most of the backyard; Ranwez testified that

were outside the fenced enclosure, not as a result of any defective construction of the fence or flawed repair to it but because one of the tenant's relatives failed to keep the dogs inside that enclosure. Although it is true that Roberts did direct Forrest to erect a fence, it is undisputed that the dogs did not escape from that enclosure due to the faulty construction of that structure. See id. at 337 (2). Because the evidence shows as a matter of law that Roberts violated no duty to Ranwez, summary judgment was appropriate. See id. at 336-337 (1).

2. Ranwez contends that the trial court erred in absolving Roberts of liability because a property owner cannot waive, assign, transfer, or otherwise avoid the rights, duties, and remedies provided in OCGA § 44-7-14 when the property is used as a dwelling place pursuant to OCGA § 44-7-2 (b) (2) and the owner is given proper notice of the defective and dangerous condition. She claims that the presence of "the vicious animals" was a "dangerous and defective condition" that Roberts had a duty to repair. She argues that Roberts had proper notice of the dangerous condition and admitted as much when he acknowledged his awareness of a prior attack by his tenant's dog.[2] Pointing out that the lease authorized Forrest to have only "a dog" on the premises "which shall remain confined to the garage," Ranwez asserts that Roberts did not enforce the terms of paragraph 14, which declared that the failure to confine the dog to the garage would result in default under the lease.

It is undisputed that Ranwez was not a party to the lease. Absolutely no evidence suggests that Ranwez was an intended third-party beneficiary of that contract. Nothing in the agreement foreclosed modifications. Roberts's decision to alter the terms of the lease at Forrest's request and to permit two dogs instead of "a dog" modified the lease as did their mutual agreement that Forrest would confine his dogs to a fenced area in the backyard. No error has been shown by the trial court's application of OCGA § 44-7-14 to these facts.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 24, 2004.

---

he built a very "small pen" off the back porch.

[2] Roberts denied knowing there had been a prior dog attack and testified that he just knew that a neighbor had attacked a dog with a lawnmower.

*Dupree, King & Kimbrough, Michael S. Kimbrough*, for appellant.

*Downey & Cleveland, Rodney S. Shockley*, for appellee.